UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michael Larson, | File No. 23-cv-3664 (ECT/TNL) |
|     Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Timothy Walz, *in his official capacity as Governor of the State of Minnesota*, Devinder Malhotra, *in his official capacity as Chancellor of the Minnesota State Colleges and Universities*, Minnesota State College Southeast *(MSCS)*, Marsha Danielson, *in her official capacity as President of MSCS*, Chad Dull, *in his official capacity as Vice President of Academic Affairs at MSCS*, Megan Zeches, *in her official capacity as Chief Human Resources Officer at MSCS*, | |
|     Defendants. | |

---

Michael Larson, *pro se*.

Madeleine DeMeules and Michael P. Goodwin, Office of the Attorney General, St. Paul, MN, for Defendants Timothy Walz, Devinder Malhotra, Minnesota State College Southeast, Marsha Danielson, Chad Dull, and Megan Zeches.

---

The State of Minnesota adopted a policy requiring some employees, including Plaintiff Michael Larson, to be fully vaccinated against COVID-19 or periodically tested for COVID-19. Mr. Larson, an English teacher at Defendant Minnesota State College Southeast ("MSC Southeast"), requested a religious accommodation excusing him from complying with the policy. He was then terminated. Representing himself, Mr. Larson brings religious-discrimination, substantive- and procedural-due-process, equal-

protection, and breach-of-contract claims against MSC Southeast, the Governor of Minnesota, the Chancellor of the Minnesota State Colleges and Universities system, and three employees in leadership positions at MSC Southeast.

Defendants move to dismiss the operative Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted in part and denied in part. Counts II through VI will be dismissed without prejudice because they are barred by Eleventh Amendment immunity. But Mr. Larson alleges facts plausibly showing religious discrimination in violation of Title VII. This claim, Count I, will only survive as to MSC Southeast, Mr. Larson's former employer.

I[1]

*The parties*. Mr. Larson was a full-time English Instructor at MSC Southeast. Am. Compl. [ECF No. 5] ¶ 1. MSC Southeast is a college within the Minnesota State Colleges and Universities system ("MNSCU"). *Id.* ¶ 2. MSC Southeast is a community and technical college that has physical campuses in Winona and Red Wing, Minnesota. *Id.*; *About Us*, Minnesota State College Southeast, https://www.southeastmn.edu/about_us/. In late 2021, when the events relevant to this suit occurred, Defendant Marsha Danielson was the President of MSC Southeast, Am. Compl. ¶ 3; Defendant Chad Dull was the Vice President of Academic Affairs at MSC Southeast, *id.* ¶ 4; Defendant Megan Zeches was the Chief Human Resources Officer at MSC Southeast, *id.* ¶ 5; Defendant Devinder

---

[1] The facts considered in deciding Defendants' motion to dismiss are drawn from the Amended Complaint and accepted as true. The six exhibits attached to the Amended Complaint will be considered as part of the Amended Complaint. *See Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 734 (D. Minn. 2016).

Malhotra was the Chancellor of the MNSCU system, *id.* ¶ 7; and Defendant Timothy Walz was the Governor of Minnesota, *id.* ¶ 6. Mr. Larson sues all five individual Defendants in their official capacities. *Id.* at 1 (caption).

*Minnesota requires state employees to provide proof of COVID-19 vaccination or submit to testing.* On August 11, 2021, the Minnesota Management and Budget Department issued HR/LR Policy # 1446. Am. Compl. ¶ 14; ECF No. 5-1 at 2–11. Relevant here, the policy required employees of the MNSCU system who "are assigned to work at the workplace" or who "wish to access the workplace for more than 10 minutes" to either provide attestation of full COVID-19 vaccination or periodically submit to COVID-19 testing. ECF No. 5-1 at 2–11. Policy # 1446 was scheduled to become effective on September 8, 2021. Am. Compl. ¶ 15; ECF No. 5-1 at 2. Staff who refused to submit to COVID-19 testing could be disciplined for refusing a work directive. ECF No. 5-1 at 5.

*Mr. Larson requests a religious exemption.* On August 29, 2021, Mr. Larson emailed Megan Zeches and Chad Dull a document entitled "Statement Establishing Religious Conviction with Regard to Certain Covid Mandates." Am. Compl. ¶ 28; ECF No. 5-1 at 12–18. That document served as his notice of claim "to a religious exemption from mask wearing, Covid testing, and mRNA injections." ECF No. 5-1 at 12. Mr. Larson is a Roman Catholic who gives "full assent" to the "teaching of the Church on matters of faith and morals." *Id.* In this statement, Mr. Larson quotes Pope Pius XII's September 14, 1952 address. *Id.* at 12–18. Interspersed between quotations, Mr. Larson explains his understanding of how these teachings of the Roman Catholic church apply to the

3

COVID-19 pandemic. *See id.* As Mr. Larson writes, the doctor "simply does not have the moral authority to do to a patient what the patient has not consented to." *Id.* at 14. Mr. Larson believes "that no one—not the scientist, not the medical doctor, not the public authority—has any moral rights over the individual's bodily integrity without his consent." *Id.* at 18. "[E]ven [the individual] himself has no moral right to engage in what he perceives to be dangerous and destructive to his person unless such action is perceived as necessary to life and no safer alternative exists." *Id.* Mr. Larson also attached a letter written by his priest "fully support[ing] and endors[ing] Mr. Michael Larson's claim to a religious exemption." *Id.* at 19; Am. Compl. ¶ 29.

*MSC Southeast asks Mr. Larson to propose accommodations.* On August 30, Megan Zeches initially responded by email, stating "[t]here is no religion exemption for either of these policies. MSC Southeast expects you to comply with the requirements of the COVID-19 Proof of Vaccination and Testing policy and the mask mandate." Am. Compl. ¶ 31. Mr. Larson sent a follow-up email on September 8, the effective date of Policy # 1446, "asking the college to clarify whether or not it had officially denied his request." *Id.* ¶ 32. On September 9, Megan Zeches emailed back "that the college would consider suggestions from him for accommodating his religious conviction." *Id.* ¶ 33.

*Mr. Larson proposes three possible accommodations.* For the fall semester of 2021, Mr. Larson was assigned to teach four online courses and one hybrid course.[2] Am. Compl. ¶ 34. On September 17, Mr. Larson offered three suggestions "that he claimed would allow

---

[2]   The hybrid course was "half online and half in the classroom." Am. Compl. ¶ 34.

4

him to fulfill his essential duties without violating his religious objection to the mandate." *Id.* ¶ 36. The first solution was "a simple exemption from the mandate requirements." *Id.* ¶¶ 37–42. The second solution was moving the hybrid course completely online. *Id.* ¶¶ 43–49. The third solution was for the college to "assign or hire another instructor for the hybrid course and then overload [Mr. Larson] in the following semester to compensate for his lighter load in the fall semester." *Id.* ¶¶ 50–53. If Mr. Larson was not teaching the hybrid class or if the hybrid class was moved online, he would not have been required to comply with Policy # 1446.

*MSC Southeast rejects the proposals and terminates Mr. Larson.* On September 20, MSC Southeast rejected all three proposed solutions as unreasonable. Am. Compl. ¶ 54. A few days later, on September 22, MSC Southeast suspended Mr. Larson without pay. *Id.* ¶ 57. He was later terminated on December 3. *Id.* ¶ 58. Mr. Larson then filed a charge with the U.S. Equal Employment Opportunity Commission that was dismissed on August 31, 2023. *Id.* ¶ 12; ECF No. 5-1 at 1.

*Mr. Larson filed this case on November 29, 2023.* Mr. Larson asserts six claims in this case: (1) a claim for religious discrimination and failure to accommodate under Title VII, 42 U.S.C. § 2000e *et seq.*, Am. Compl. ¶¶ 25–59; (2) a substantive-due-process claim under the Fourteenth Amendment and 42 U.S.C. § 1983, Am. Compl. ¶¶ 60–88; (3) a procedural-due-process claim under the Fourteenth Amendment and 42 U.S.C. § 1983, Am. Compl. ¶¶ 89–95; (4) a claim that Defendants violated the Equal Protection Clause of the United States Constitution, Am. Compl. ¶¶ 96–100; (5) a claim for wrongful termination, Am. Compl. ¶¶ 101–06; and (6) a claim for breach of contract, alleging MSC

5

Southeast violated a contractual fifteen-day limit on suspensions, Am. Compl. ¶¶ 107–21. For relief, Mr. Larson seeks damages and declaratory judgment. Am. Compl. ¶ 122.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

"Insofar as Defendants invoke sovereign immunity under the Eleventh Amendment, Defendants' motion is properly analyzed under Rule 12(b)(1)." *Favors v. Ensz*, No. 20-cv-1378 (SRN/DTS), 2021 WL 3293539, at *2 (D. Minn. Aug. 2, 2021), *aff'd*, No. 21-2826, 2022 WL 68805 (8th Cir. Jan. 7, 2022). After all, "Eleventh Amendment immunity would deprive the Court of jurisdiction." *United States v. Minn. Transitions Charter Sch.*, 50 F. Supp. 3d 1106, 1111 (D. Minn. 2014); *see also Alsbrook v. City of Maumelle*, 184

F.3d 999, 1005 (8th Cir. 1999).[3] Because Defendants' Eleventh-Amendment challenge accepts Mr. Larson's factual allegations as true, the challenge will be treated as a facial attack on jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A court analyzing a facial attack "restricts itself to the face of the pleadings . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

When deciding Defendants' motion, Mr. Larson's *pro se* pleadings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). *Pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (alteration in original) (quoting *Stone*, 364 F.3d at 914). Still, even under this liberal standard, a *pro se* complaint must contain sufficient facts in support of the claims it advances. *Stone*, 364 F.3d at 914.

---

[3] There is some disagreement whether "the defense of sovereign immunity raises a jurisdictional issue that ought to be presented in a Rule 12(b)(1) motion as opposed to a motion to dismiss for failure to state a claim upon which relief may be granted." *Harris v. Oliver*, No. 06-cv-3017, 2007 WL 1456212, at *2 n.1 (D. Neb. May 16, 2007). As Wright & Miller explains: "The [Supreme] Court has sent conflicting signals on the nature of the sovereign immunity defense. In some ways, it has treated the defense as jurisdictional and in others it has not. It is aware of this fact, and has forthrightly recognized that it has not definitively resolved the question." 9 Charles Alan Wright, Arthur R. Miller, & Richard D. Freer, *Federal Practice & Procedure: Jurisdiction and Related Matters* § 3524.1 (3d ed. June 2024 update).

III

A

Defendants move to dismiss Counts II, III, IV, V, and VI of the Amended Complaint based on Eleventh Amendment immunity. Defs.' Mem. in Supp. [ECF No. 21] at 11–13. Absent waiver of immunity by a state or a valid congressional override, the Eleventh Amendment bars suits in federal court against a state or state agency "for any kind of relief." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). This immunity includes protection from breach-of-contract claims brought under Minnesota law. *See Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 583 (8th Cir. 2021). To determine the applicability of the Eleventh Amendment to a political subdivision, such as a community college, courts must "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state." *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1439 (8th Cir. 1996) (quoting *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985)).

There is no need to conduct such analysis here because courts in this District agree that colleges and universities within the MNSCU system, such as MSC Southeast, are instrumentalities of the State of Minnesota for purposes of Eleventh Amendment immunity. *Schneeweis v. Nw. Tech. Coll.*, No. 97-cv-1742 (JRT/RLE), 1998 WL 420564, at *5 (D. Minn. June 1, 1998); *Lewis v. St. Cloud State Univ.*, No. 04-cv-4379 (RHK/RLE), 2005 WL 3134064, at *11 (D. Minn. Nov. 23, 2005); *Phillips v. Minn. State Univ. Mankato*, No. 09-cv-1659 (DSD/FLN), 2009 WL 5103233, at *3 (D. Minn. Dec. 17, 2009); *Stenzel v. Peterson*, No. 17-cv-580 (JRT/LIB), 2017 WL 4081897, at *6 (D. Minn. Sept.

8

13, 2017); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 938 (D. Minn. 2018) ("Eleventh Amendment immunity extends to SCSU because it is an instrumentality of the state."). And the Eighth Circuit has twice applied Eleventh Amendment immunity to similar colleges and universities without comment. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 620 (8th Cir. 1995); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968–69 (8th Cir. 2000).

Having concluded MSC Southeast is an instrumentality of the State of Minnesota, the Eleventh Amendment bars Mr. Larson from suing MSC Southeast in federal court. The Eleventh Amendment also bars claims for damages against state employees sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). This is because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Graham*, 473 U.S. at 165); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining a suit against a state official in his or her official capacity "is no different from a suit against the State itself"). Because Mr. Larson sues employees of MSC Southeast, the Chancellor of the MNSCU system, and the Governor of Minnesota in their official capacities, *see* Am. Compl. at 1 (caption), the Eleventh Amendment bars Mr. Larson's claims for damages.[4]

---

[4] Mr. Larson quotes *Hafer v. Melo*, 502 U.S. 21 (1991), for the proposition that "State officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." Pl.'s Mem. in Opp'n [ECF No. 24] at 5–6. *Hafer* does not change anything here. In *Hafer*, the Supreme Court sought to clarify that official-capacity and individual-capacity suits are "reference[s] to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury," *Hafer*, 502 U.S. at

9

Although *pro se* complaints must be construed liberally, Mr. Larson expresses no intent to sue any Defendant in their individual capacities. *See* Pl.'s Mem. in Opp'n [ECF No. 24] at 6 ("[T]he Plaintiff does not wish to make any of the individual Defendants personally liable for monetary damages.").

Mr. Larson argues that Counts II through VI should not be dismissed by invoking the *Ex parte Young* exception, contending that even if he is barred from recovering monetary damages, he can still seek relief in the form of declaratory judgment. Pl.'s Mem. in Opp'n at 6–7. Under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60). "The *Ex parte Young* doctrine rests on the premise 'that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.'" *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up)). This narrow exception "does not

---

25–27. *Hafer* still requires a plaintiff to bring an individual-capacity suit to hold state officials personally liable. *Id.*

permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)).

Here, Mr. Larson seeks only retrospective relief. The Amended Complaint is based on events in 2021 that resulted in Mr. Larson's termination, so none of his claims involve ongoing violations of federal law. Mr. Larson does not allege, for example, that Policy # 1446 is still in effect and that he remains subject to the policy. As for Mr. Larson's requests for declaratory judgment, he seeks declarations "that Defendant MSCS **was** in violation of Title VII law in its failure to accept or provide reasonable accommodation," Am. Compl. ¶ 122(A) (emphasis added), and that "HR/LR Policy # 1446 **was** in violation of federal and state statutory law," *id.* ¶ 122(C) (emphasis added). The requested declarations do not fall within the narrow scope of the *Ex parte Young* doctrine—they are requests for *"*judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct*, 506 U.S. at 146. Mr. Larson's final request is "to declare the mandating of [Emergency Use Authorization] medical interventions unconstitutional." Am. Compl. ¶ 122(B). Again, the requested declaration is not linked to some ongoing violation of his federal rights. Nor does Mr. Larson allege he will be subjected to some state-mandated medical intervention in the near future. Without such allegations, the requested declaratory relief is not permissible, prospective relief under the *Ex parte Young* doctrine. *Cf. 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) ("Appellants are not subject to or threatened with any enforcement proceeding by the attorney general. Thus, we find the attorney general immune from suit under the Eleventh Amendment.").

11

B

Mr. Larson's remaining claim, Count I, is for religious discrimination and failure to accommodate under Title VII.[5]  Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII, a plaintiff eventually must show that he "(1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action." *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007) (citing *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam)).[6]

---

[5]  Defendants do not argue that Eleventh Amendment immunity applies to claims for religious discrimination and failure to accommodate under Title VII.  *See* Defs.' Mem. in Supp. at 11–13.

[6]  The plaintiff need not plead facts establishing a prima facie case to survive a Rule 12(b)(6) motion in a Title VII case, because the prima facie case is an evidentiary standard, not a pleading requirement.  *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit.  Instead, such elements are part of the background against which a plausibility determination should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th

Once a plaintiff makes out a prima facie case, the burden shifts to the employer to prove accommodating the employee's religious beliefs would cause an "undue hardship." *Seaworth*, 203 F.3d at 1057. To demonstrate "undue hardship," the employer must establish that the "burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

Mr. Larson alleges facts plausibly showing a prima facie case. (1) The Amended Complaint includes an exhibit describing Mr. Larson's Roman Catholic faith and his belief that "no one . . . has any moral rights over the individual's bodily integrity without his consent." ECF No. 5-1 at 18. Mr. Larson also attaches a letter from his priest, fully supporting and endorsing Mr. Larson's claim to a religious exemption. *Id.* at 19. Those exhibits to the Amended Complaint adequately describe a connection between Mr. Larson's faith and his objections to COVID-19 vaccines and testing, grounded in Mr. Larson's refusal to consent to what he perceived as harmful invasions of his bodily integrity. *See* ECF No. 5-1 at 14. ("I wish to point out here that it matters not whether *others* perceive perils in masking, testing, and mRNA injections. It is enough that I do. And I do."). From Mr. Larson's descriptions of the "PCR nasal-swab test" as "an invasive diagnostic procedure," Am. Compl. ¶ 18, it can be inferred that Mr. Larson viewed PCR tests as a violation of his bodily integrity. (2) Mr. Larson alleges he informed MSC

---

Cir. 2016) (cleaned up). The elements may be used as a "prism to shed light upon the plausibility of the claim." *Id.* (quotation omitted).

Southeast of these objections. *Id.* ¶¶ 28–29. (3) And Mr. Larson alleges MSC Southeast terminated his employment for refusing to comply with Policy # 1446. *Id.* ¶¶ 54, 58.

Defendants counter that Mr. Larson has not plausibly alleged bona fide religious beliefs, but instead merely identifies secular objections. Defs.' Mem. in Supp. at 7–11. According to Defendants, "[Mr. Larson's] own assertions in the Amended Complaint establish that his belief that these protocols would violate his bodily autonomy stems purely from scientific facts and reasoning." *Id.* at 11. For this argument, Defendants focus on Mr. Larson's broader allegations regarding the ineffectiveness of the COVID-19 vaccines and PCR tests. *See* Am. Compl. ¶¶ 77–85. But these factual allegations do not render Mr. Larson's beliefs about bodily autonomy non-religious. Rather, allegations as to the efficacy and perceived harm of COVID-19 vaccines and PCR tests seem to explain why Mr. Larson understood his refusal to comply with Policy # 1446 as a moral, religious duty. As Mr. Larson explains, "even [the individual] himself has no moral right to engage in what he perceives to be dangerous and destructive to his person unless such action is perceived as necessary to life and no safer alternative exists." ECF No. 5-1 at 18. It is not obvious why Mr. Larson's perceptions about the efficacy and harm of COVID-19 vaccines and PCR tests necessarily would break the connection between his bodily-autonomy beliefs and refusal to abide by Policy # 1446.

Moreover, determining whether Mr. Larson's objections—or which of them—are religious is a fact-intensive question that seems generally ill-suited for resolution at the motion-to-dismiss stage. *See Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) (identifying considerations relevant to answering whether a belief is religious in nature, as distinct from

a belief that is secular or personal). The Eighth Circuit's recent decision finding employees plausibly pleaded Christian religious beliefs that conflicted with their employer's COVID-19 vaccination requirement reinforces this conclusion. *Ringhofer v. Mayo Clinic, Ambulance*, --- F.4th ---, No. 23-2994 *et al.*, 2024 WL 2498263, at *4 (8th Cir. May 24, 2024) (warning against "focusing on specific parts" of a complaint to hold beliefs are "personal" or "medical" instead of religious). That is not to say this question could never be appropriate for resolution on a Rule 12(b)(6) motion. It is to say that Mr. Larson has adequately tethered his objections—including objections that might reasonably be construed as secular or personal—to his Roman Catholic faith. Construing the *pro se* Amended Complaint liberally, it is plausible that Mr. Larson's objections are rooted in his faith. That is enough for now.

As a final matter, Defendants argue MSC Southeast is the only proper defendant to Mr. Larson's Title VII claim. Defs.' Mem. in Supp. at 7. It is true that claims against individual defendants would be "properly dismissed because liability under 42 U.S.C. § 2000e(b) can attach only to employers." *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). But the individual Defendants are only sued in their official, not individual, capacities. Whether individual defendants may be personally liable and whether official-capacity non-employer defendants must be dismissed as improper defendants are two separate questions. Although there is no binding law on point, "many district courts [within this circuit] have dismissed claims against individual supervisors named as Title VII defendants in their official capacity as redundant to claims against the employer." *Carter v. Mil. Dep't of Ark.*, No. 18-cv-00444-KGB, 2019 WL 4741651, at *4

15

(E.D. Ark. Sept. 27, 2019) (collecting cases). The question need not be answered here, because Mr. Larson "does not object to this conclusion." Pl.'s Mem. in Opp'n at 2. Therefore, Count I will be dismissed against Defendants Marsha Danielson, Chad Dull, and Megan Zeches.[7]

## ORDER

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 18] is **GRANTED in part** and **DENIED in part**.

2. Counts II through VI of the Amended Complaint are **DISMISSED without prejudice**.

3. Count I of the Amended Complaint is **DISMISSED with prejudice** as to Defendants Marsha Danielson, Chad Dull, and Megan Zeches.

4. The Motion is **DENIED** with respect to Count I as brought against Defendant Minnesota State College Southeast.

Date: June 12, 2024              s/ Eric C. Tostrud
                                 Eric C. Tostrud
                                 United States District Court

---

[7] Mr. Larson only brings Count I against Defendants MSC Southeast, Marsha Danielson, Chad Dull, and Megan Zeches. *See* Am. Compl. at 10 (Count I).